**FILED**

**IN THE UNITED STATES BANKRUTPCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

APR 09 2018

CLERK, U.S. BANKRUPTCY COURT
WEST DIST. OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 16-23695-GLT |
| **RICHARD P. BUTKO** and **LORRAINE E. BUTKO**, | Chapter 13 |
| *Debtors.* | |
| **RICHARD P. BUTKO** and **LORRAINE E. BUTKO**, | Related to Dkt. No. 170 |
| *Movants,* | |
| v. | |
| **RONALD A. CICCOZZI**, **JOAN L. CICCOZZI**, and **RONDA J. WINNECOUR**, chapter 13 trustee, | |
| *Respondents.* | |

## MEMORANDUM OPINION

Richard and Lorraine Butko ("Debtors") occupy a residential property owned by Ronald Ciccozzi and located at 120 Heather Dr. in Monaca, Pennsylvania ("Property").[1] After battling for years over their respective rights to the Property, the parties' acrimonious dispute landed here when the Butkos commenced their bankruptcy case. The Court hoped to dispel the tension through mediation, but despite their successful negotiation of a Court-approved settlement, the parties now return with renewed vigor to contest the notice and default provisions within the settlement agreement. In this highly contentious matter for which the legal fees may now exceed the amount in controversy, the Court must determine whether Ciccozzi is entitled to stay relief.

---

[1]   Ex. A, Dkt. No. 137-1.

## I.

The current dispute and the animosity it generates date back many years. It appears the Debtors initially agreed to purchase the Property from Ciccozzi and his late wife, Joan Ciccozzi,[2] through an installment land contract executed in July 2009. For reasons which are not entirely clear, the parties then entered into a *Lease with Option to Purchase* ("Lease") on December 1, 2014 that terminated the 2009 agreement and released and waived any related rights.[3] The Lease provided for monthly rental payments of $1,675 and gave the Debtors the right to purchase the Property for $43,632 plus costs upon thirty days' notice to the Ciccozzis. In turn, the Ciccozzis agreed to credit $1,212 from each rental payment received against the purchase price.[4]

After defaulting on their September 2016 payment obligation, the Debtors petitioned for relief under chapter 13 of title 11 of the U.S. Code on October 1, 2016.[5] The Ciccozzis filed a motion for relief from stay that prompted the Court to determine whether the Lease was a true lease or disguised financing agreement in the form of an installment land contract.[6] On December 22, 2016, the Court issued its *Memorandum Order* finding the Lease to be a true lease agreement but denying stay relief because the Debtors commenced their bankruptcy case before the Lease cure period expired.[7] The Debtors appealed the decision,[8] but Judge Fischer

---

[2] Ex. A, Dkt. No. 14. Mrs. Ciccozzi passed away on September 23, 2017. See *Status Report*, Dkt. No. 148 at ¶ 3.

[3] The record was never fully developed with respect to the July 2009 agreement, presumably because it was rendered irrelevant by the language contained in the Lease.

[4] Ex. A, Dkt. No. 14 at p. 6.

[5] Dkt. No. 1.

[6] Dkt. No. 14.

[7] Dkt. No. 41.

[8] Dkt. No. 46.

of the U.S. District Court for the Western District of Pennsylvania held that the *Memorandum Order* was an unappealable interlocutory order.[9] The Debtors then filed an amended *Chapter 13 Plan dated February 24, 2017* to assume the Lease under 11 U.S.C. § 365 and ostensibly exercise the purchase option during the plan term.[10]

Ciccozzi filed objections to the chapter 13 plan disputing, among other things, the Debtors' right to assume the purchase option and arguing that they could only assume the Lease as month-to-month tenants.[11] To facilitate a final resolution of these disputes and alleviate the considerable bitterness existing between the parties, the Court referred the matter to mediation before the Honorable Judith K. Fitzgerald, a former chief judge of this Court.[12]

As a result of the mediation, the Debtors and Ciccozzi consensually entered into a settlement agreement ("Settlement Agreement"), which provides that the Debtors will pay Ciccozzi $1,675 on the fifth of each month for thirty-six months.[13] It also requires Ciccozzi to deliver the deed to the Property into escrow, with the understanding that it will be released to the Debtors upon completion of their required payments.[14] Finally, it provides the Debtors with a ten-day cure period in the event of a payment default.[15] After that date, Ciccozzi has no obligation to notify the Debtors of any nonpayment.[16]

---

[9]  Dkt. No. 77.

[10] Dkt. No. 85.

[11] Dkt. No. 96.

[12] Dkt. No. 134.

[13] Ex. A, Dkt. No. 137-1 at ¶ 3.

[14] Id. at ¶ 21.

[15] Id. at ¶¶ 12, 14.

[16] Id. at ¶ 13.

The Settlement Agreement was presented to the Court for approval under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9019.[17] During the hearing, the Court expressed concern with the onerous default provisions specifying that "all rights that [the Debtors] may have in the Property shall finally and permanently terminate" in the event a default is not timely cured.[18] The Settlement Agreement also provides that in the event of an uncured default, the Court shall grant Ciccozzi stay relief upon the filing of an affidavit of default.[19] Acknowledging that they were fully aware of the repercussions of a default, the Debtors committed themselves to proceeding with the settlement:

> It is admitted that the forfeiture procedure is dangerous. The [Debtors] have been fully informed of this risk and have been advised to attend the hearing on this motion. They agree to accept this risk due to their inability to fund the option payment and extensive additional litigation costs absent settlement and to remove any risk of loss of the [Property] by an adverse ruling on appeal.[20]

After a hearing on September 19, 2017, the Court approved the Settlement Agreement subject to certain modifications, including a requirement that Ciccozzi report any default to the Court by filing a notice of default within two days after the applicable cure period expired.[21]

Less than two months later, Ciccozzi filed a notice indicating that the Debtors had defaulted on their November 2017 payment obligation and requesting enforcement of the forfeiture provisions of the Settlement Agreement.[22] The Debtors filed a *Motion to Deny Ronald A.*

---

[17] Dkt. No. 137.

[18] Ex. A, Dkt. No. 137-1 at ¶ 15.

[19] Id. at ¶ 18.

[20] Dkt. No. 137 at ¶ 9.

[21] Dkt. No. 146. The Court has held that settlement agreements are binding from the date the parties enter into them because its approval is a condition subsequent rather than a condition precedent. In re Turner, 274 B.R. 675, 680–81 (Bankr. W.D. Pa. 2002).

[22] Dkt. No. 169.

*Ciccozzi's Request for Relief from Stay* ("Debtors' Motion"),[23] arguing that the Settlement Agreement is an installment land contract subject to the Loan Interest and Protection Law ("Act 6"), which affords residential mortgagors unwaivable[24] rights to statutory notice[25] of defaults and a thirty-day cure period.[26] Ciccozzi responded, arguing that the Debtors are estopped from taking that position, and that if Act 6 does apply, the Settlement Agreement is void because there was no meeting of the minds and the parties entered into it by virtue of a mutual mistake as to its enforceability.[27] The Debtors argue that estoppel and mutual mistake do not apply because the Settlement Agreement's reference to the "applicable cure period" in ¶ 14 should be read as a reference to the thirty-day period afforded by statute rather than the contractual ten-day period. The Debtors also assert that Ciccozzi waived the default by accepting payment.[28]

Since then, Ciccozzi filed another notice of default (suggesting the Debtors failed to make their December 2017 payment),[29] followed by a motion to rescind the Settlement Agreement and vacate the order approving it under Federal Rule of Civil Procedure ("Rule") 60(b)(6) (as incorporated by Bankruptcy Rule 9024).[30] The Debtors subsequently filed notices indicating that they cured their December 2017 default and paid their January 2018 obligation,[31]

---

[23]   Dkt. No. 170.

[24]   41 PA. CONS. STAT. § 408.

[25]   41 PA. CONS. STAT. § 403.

[26]   41 PA. CONS. STAT. § 404.

[27]   Dkt. No. 176.

[28]   Dkt. No. 177.

[29]   Dkt. No. 182.

[30]   Dkt. No. 187.

[31]   Dkt. Nos. 186, 188.

followed by a response arguing that the facts of this case do not constitute the extraordinary circumstances that would trigger Rule 60(b).[32] After the Court conducted a hearing on the motion to vacate on February 14, 2018, Ciccozzi withdrew his motion to rescind the Settlement Agreement.[33]

The Court afforded the parties additional time to discuss a potential resolution of these issues, but after several hearings on these matters, they remain entrenched in their positions. Accordingly, this matter is now ripe for disposition on the Debtors' Motion.

## II.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(b).[34] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).[35] The Court makes its findings of facts and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.[36]

### A.

The Court must determine whether the default provisions in the Settlement Agreement are superseded by the notice and cure requirements of Act 6, and if so, whether that nullifies the Settlement Agreement. Settlement agreements "share many characteristics of voluntary contracts and are construed according to traditional precepts of contract construction."[37] Any settlement agreement that would be "a contract under relevant nonbankruptcy law . . . will be

---

[32] Dkt. No. 192.

[33] Dkt. No. 200.

[34] 28 U.S.C. § 1334(b); 11 U.S.C. § 157(a).

[35] 28 U.S.C. § 157(b)(2)(G).

[36] FED. R. BANKR. P. 9014(c) (applying FED. R. BANKR. P. 7052 to non-adversary contested matters).

[37] In re Columbia Gas System Inc., 50 F.3d 233, 238 (3d Cir. 1995); see also Mazzella v. Koken, 739 A.2d 765, 767 (Pa. 1986) ("The enforceability of settlement agreements is governed by principles of contract law.").

6

a contract in bankruptcy '[u]nless some federal interest requires a different result.'"[38] Because state law governs questions of contractual validity,[39] the Court will apply Pennsylvania law to assess the viability of the Settlement Agreement.[40]

By its plain terms, the protective provisions of Act 6 apply to residential mortgages.[41] The statute defines a "residential mortgage" as:

> an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit.[42]

Pennsylvania courts have held that the definition of "residential mortgage" in Act 6 should be broadly construed to include residential installment land contracts because "substance must prevail over form."[43]

The Settlement Agreement easily satisfies three of the definitional elements of a "residential mortgage" under Act 6, as applied to installment land contracts. The first element, "an obligation to pay a sum of money,"[44] is fulfilled because the Settlement Agreement imposes

---

[38]    Id. (citing Butner v. United States, 440 U.S. 48, 55 (1979)).

[39]    See, e.g., Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 36 (1988) ("[I]ssues of contract, including a contract's validity, are nearly always governed by state law.").

[40]    Although the Settlement Agreement does not contain a choice-of-law provision, it was executed by the parties and approved by the Court in Pennsylvania, where the Property is located. No party has suggested that any other law should govern. See Memorandum Order, Dkt. No. 41 at 4 ("In this case, the Court applies Pennsylvania law because the Property is located within the Commonwealth and the parties have not argued for any other controlling authority.")

[41]    See 41 Pa. Cons. Stat. §§ 403, 404. But see 41 Pa. Cons. Stat. § 407(a) (applying to "any residential real property.").

[42]    41 Pa. Cons. Stat. § 101.

[43]    Anderson Contracting Co. v. Daughtery, 417 A.2d 1227, 1232 (Pa. Super. Ct. 1979).

[44]    41 Pa. Const. Stat. § 101.

an obligation to pay Ciccozzi $1,675 per month for thirty-six months.[45] The second element, requiring that the sum be "in an original bona fide principal amount of the base figure or less,"[46] is also met. The "base figure" is an amount established by the Pennsylvania Department of Banking and Securities, and is adjusted annually for inflation. When the Settlement Agreement was executed in 2017,[47] the "base figure" was $244,856,[48] an amount considerably larger than the $60,300 payable under the Settlement Agreement. The final element is also satisfied because the Property contains a single house in Monaca and is therefore "located within this Commonwealth containing two or fewer residential units."[49]

To trigger Act 6 protections, the obligation in the Settlement Agreement must also be secured by a lien. Although neither Act 6 nor its implementing regulations define a "lien," commentator David Auten noted that the applicable regulatory definition of "security document" "impl[ies] that the term 'lien' includes . . . an 'inchoate lien' in a document which permits the lender to obtain an actual lien without further action by the borrower."[50] Citing this analysis, the Pennsylvania Superior Court held that a vendor's retention of legal title to property as security acts as a lien because it "may be enforced as though it were" one.[51] Here, the Settlement Agreement

---

[45]   Ex. A, Dkt. No. 137-1 at ¶ 3.

[46]   41 PA. CONST. STAT. § 101.

[47]   The "base figure" in effect at the time of the transaction must be utilized. See Trunzo v. Citi Mortg., 43 F. Supp. 3d 517, 535 (W.D. Pa. 2014).

[48]   Robin L. Weissmann, Secretary, *Adjustment to Definition of "Base Figure" in the Loan Interest and Protection Law*, 47 PA. BULL. 7054 (Nov. 18, 2017), https://www.pabulletin.com/secure/data/vol47/47-46/1884.html.

[49]   41 PA. CONST. STAT. § 101.

[50]   Anderson, 417 A.2d at 1231 (citing David C. Auten, *A Review of the Pennsylvania Usury Law (Act No. 6 of 1974)*, 46 PA. B.A.Q. 38, 45 (1975)).

[51]   Id.

8

provides that Ciccozzi shall execute a deed for the Property, but it will be held in escrow and may be returned in the event of a default by the Debtors.[52] Irrespective of whether the deed is held in escrow or personally retained by the vendor until the agreement is satisfied, the nature of the transaction is the same.[53] In either situation, the vendor retains an interest in the legal title prior to the delivery of the deed to the vendees.[54] Accordingly, the Court finds this element is also satisfied.

The analysis of the remaining element, whether the obligation was "evidenced by security document," is similar to the requirement for a lien. Act 6 defines a "security document" as "a mortgage, deed of trust, real estate sales contract or other document creating upon recordation a lien upon real estate."[55] The Debtors do not contend that the Settlement Agreement falls within one of these categories. Instead, they argue that it comes within the statute's purview as an installment land contract.

Although not specified in the statute itself, the implementing regulation clarifies that an installment land contract is among the types of instruments that may qualify as a "security document" for the purpose of Act 6 protections, the definition of which includes:

> (i) An installment land contract, land contract or lease purchase agreement. It shall also include any similar document if it is a lease of real property where the lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the real property involved and it is agreed

---

[52] Ex. A, Dkt. No. 137-1 at ¶ 4, 18.

[53] See Bohlen v. Black, 85 A. 470, 472–73 (Pa. 1912).

[54] See generally, e.g., Wolfe v. Branch Banking and Trust Co., 2016 WL 6576850 at *2 (Pa. Super. Ct. Nov. 7, 2016) (showing a similarly structured contract and referencing the retention of legal title by the vendors prior to delivery from escrow to the vendee.)

[55] 41 PA. CONST. STAT. § 101. Under Anderson, whether the contract could be recorded is operative rather than whether it has been recorded. Anderson, 714 A.2d at 1230. Although the Settlement Agreement was not recorded, it could have been recorded regardless of whether it is a lease with a purchase option or an installment land contract. 21 PA. CONS. STAT. § 404 (permitting the recording of leases); see generally, e.g., Stillwater Lakes Civic Ass'n, Inc. v. Krawitz, 772 A.2d 118, 119–20 (Cmmw. Ct. Pa. 2001) (referencing a recorded installment land contract).

9

Case 16-23695-GLT    Doc 220    Filed 04/09/18    Entered 04/09/18 17:07:45    Desc Main
                             Document      Page 10 of 19

that the lessee will become, or for no other (or a nominal) consideration has the option to become, the owner of the real property upon full compliance with the terms of the agreement.[56]

Neither Act 6 nor the regulation define an "installment land contract," but Pennsylvania courts hold that the term generally applies to contracts for the sale of real property in which "the vendee takes possession and makes periodic installment payments until the balance of the contract price is paid," while the vendor retains legal title "until the terms of the contract are satisfied."[57] The Court notes that although it determined the previous agreement between the parties was a lease,[58] the Settlement Agreement fits neatly within Anderson's definition of an installment land contract.[59] Unlike the previous agreement, the Settlement Agreement is not a lease because it imposes an obligation to pay and consequences for default. And even if it were construed to be a lease with a purchase option, the second sentence of the regulation demonstrates that these types of agreements constitute "security documents" under Act 6.

Accordingly, it appears that the Settlement Agreement meets the definitional elements of Act 6 as interpreted by Pennsylvania courts. As an obligation to pay $60,300 secured by Ciccozzi's retention of legal title and evidenced by an installment land contract for the sale of real property containing a house in Pennsylvania, it qualifies as a "residential mortgage" under Act 6. However, the inquiry does not end there. The Court is not convinced that the Settlement Agreement runs afoul of Act 6—and even if it did, the Debtors are judicially estopped from asserting this position to avail themselves its protections.

---

[56]   10 PA. CODE § 7.2; see also Anderson, 417 A.2d at 1230. Like Act 6, the regulations do not define an installment land contract.

[57]   Anderson, 417 A.2d at 1231.

[58]   See supra note 7 and accompanying text.

[59]   Indeed, the Settlement Agreement contains a merger clause that makes it a novation. Ex. A, Dkt. No. 37-1 at ¶ 27.

**B.**

Like contracts,[60] Pennsylvania courts will not enforce illegal settlement agreements. In Watrel v. Commonwealth, Department of Education, the Supreme Court of Pennsylvania declined to enforce a settlement agreement between the plaintiff (who alleged the governor illegally discharged him from his presidency at Slippery Rock State College[61]) and the Pennsylvania Department of Education ("DOE") because it could not be performed without violating the state retirement code.[62] Per the agreement, the plaintiff sent a contribution to the DOE to become vested in the state retirement system after his discharge, and the DOE forwarded it to the State Employee Retirement Board ("SERB"), which refused to accept it because the employee was not an "active member" as the retirement code requires.[63] The court held that the plaintiff "must be charged with the knowledge" of the law and that "he bargained himself out of the retirement system."[64] Under similar facts, the Commonwealth Court of Pennsylvania "observed that neither SERB nor the courts have the authority to circumvent the express language of the [Retirement] Code or provide equitable relief contrary to the mandates of the Retirement Code."[65] However, the settlement agreements in both cases did not require court approval and did

---

[60]  See, e.g., Am. Ass'n of Meat Processors v. Cas. Reciprocal Exch., 588 A.2d 491, 496 (Pa. 1991) ("[T]he courts of this Commonwealth will not be used to enforce contracts which violate public policy; such contracts are void and the law will have nothing to do with them.").

[61]  The school is now called the Slippery Rock University of Pennsylvania. See "History," SLIPPERY ROCK U., http://www.sru.edu/about/history (last visited Jan. 11, 2018).

[62]  Watrel v. Commw. Dept. of Educ., 518 A.2d 1158, 1160 (Pa. 1986).

[63]  Id. at 1161.

[64]  Id. at 1160–61.

[65]  Cicchiello v. SEIU 1199P Union Serv. Employees Intern. Union, 2016 WL 1639015 at *9 (Pa. Commw. Ct. Apr. 26, 2016) (citation and internal quotation marks omitted) (modification in the original).

11

Case 16-23695-GLT Doc 220 Filed 04/09/18 Entered 04/09/18 17:07:45 Desc Main
Document Page 12 of 19

not come before the courts until the plaintiffs sought to enforce them.[66] The offending provisions also pertained to performance rather than default.

The doctrine of judicial estoppel "uphold[s] the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires."[67] While Pennsylvania law governs the interpretation of the Settlement Agreement, federal law provides the test for judicial estoppel.[68] In the Third Circuit, "three factors inform a federal court's decision whether to apply it: . . . (1) 'irreconcilably inconsistent positions;' (2) 'adopted . . . in bad faith;' and (3) 'a showing that . . . estoppel . . . address[es] the harm and . . . no lesser sanction [is] sufficient.'"[69] But "there is no rigid test."[70] As our Court of Appeals explained, "[s]uch use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' . . . [is] an evil the courts should not tolerate."[71] Here, the Debtors petitioned the Court to approve the Settlement Agreement upon assurances that they accepted the risks its notice and default provisions posed, then sought to escape those consequences once triggered. To the extent that bad faith is a required element, the Court notes that despite representations from Debtors' counsel to

---

[66] Watrel at 1159; Cicchiello at *1.

[67] In re Adoption of S.A.J., 838 A.2d 616, 621 (Pa. 2003) (internal quotation marks and citation omitted).

[68] G–I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 261 (3d Cir. 2009) ("[A] federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose.") (quoting Ryan Operations G.P. v. Santiam–Midwest Lumber Co., 81 F.3d 355, 358 n.2 (3d Cir. 1996)).

[69] Id. (quoting Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008)) (alterations in the original); cf. Trowbridge v. Scranton Artificial Limb Co., 747 A.2d 862, 864 (Pa. 2000) ("[A] party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained."); Ligon v. Middletown Area School Dist., 584 A.2d 376, 380 (Pa. Commw. Ct. 1990) (The doctrine applies "with equal if not greater force when a party switches positions within the same action.").

[70] G–I Holdings, 586 F.3d at 261.

[71] Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d. Cir. 1953) (citation omitted).

the contrary,[72] his response to Ciccozzi's first motion for relief from stay indicated an awareness of the applicability of Act 6 to both installment land contracts and leases with purchase options.[73] This would suggest he laid a trap for Ciccozzi during the mediation, knowing that the onerous terms required to secure Ciccozzi's agreement were unenforceable. If that were the case, then no lesser remedy than estoppel would deny the Debtors the benefit of this type of chicanery.

Both Pennsylvania and Third Circuit courts have held that a contract void *ab initio* cannot be rendered enforceable by estoppel.[74] In Pennsylvania, "an agreement which violates a statutory provision, or which cannot be effectively performed without violating [a] statute, is illegal, unenforceable, and void *ab initio*."[75] However, courts have read this holding broadly and identified a distinction between provisions pertaining to performance rather than default. For example, a loan agreement that allegedly violated the state liquor code was not void *ab initio* because "it could have been effectively performed had [the] Borrower not defaulted," regardless of the legality of the challenged provision.[76]

---

[72]   See infra note 84 and accompanying text.

[73]   Dkt. No. 30 at 1.

[74]   See e.g., W.S. Weed & Co. v. Cuming, 12 Pa. Super. 412, 418 (Pa. Super. Ct. 1899) ("There is, therefore, no room for equitable presumptions, or estoppels, in cases of illegal contracts."), aff'd, Weed v. Cuming, 48 A. 409 (Pa. 1901); see also, e.g., Wilmington Savs. Fund Soc'y, FSB v. PHL Variable Ins. Co., 2014 WL 1389974 at *12 (D. Del. Apr. 9, 2014) ("[A] contract that is void ab initio may not be enforced equitably through estoppel . . . ."). The Court notes that these cases all concern equitable rather than judicial estoppel. See also, e.g., Fidelity Federal Sav. and Loan Ass'n v. Capponi, 684 A.2d 580, 587-88 (Pa. Super. Ct. 1996) (holding that equitable estoppel cannot circumvent a state statute declaring purported waivers "to be void"); Glidden v. Strupler, 52 Pa. 400, 405–07 (Pa. 1866) (holding that a void deed cannot be enforced by equitable estoppel).

[75]   Watrel, 488 A.2d at 381 (internal quotation marks and citation omitted) (alteration in the original).

[76]   3400 Airport Road Holdings Ltd. P'ship v. Mehta, 2013 WL 11266168 at *5 (Pa. Super. Ct. Apr. 18, 2013). In reaching this conclusion, the court declined to determine whether the provision violated the liquor code.

The Settlement Agreement can, of course, be legally performed notwithstanding any alleged inconsistency with Act 6. Further, to the extent Act 6 does govern the Settlement Agreement, it is not clear that it has been violated. Act 6 states that its provisions "may not be waived by any oral or written agreement executed by any person."[77] This contrasts with other contracts courts have held to be unenforceable when statutory language rendered them void.[78] The Supreme Court of Pennsylvania has held that "[a] waiver in law is the act of *intentionally* relinquishing or abandoning some *known* right, claim or privilege."[79] In a criminal context, it has also held that "intentionally and knowingly" does not mean "knew or should have known" but rather requires actual knowledge.[80] Although waiver may be express or implied, "it will not be implied[] unless the party asserting waiver has been misled to its prejudice."[81]

The Settlement Agreement contains no waiver provision, nor has any party asserted that Act 6 was contemplated during the mediation. To the contrary, the Debtors argue that "Ciccozzi should have known that the Settlement Agreement was subject to the provisions of Act 6,"[82] taking the position that Ciccozzi did not in fact possess this knowledge. In contrast with his acknowledgment of the applicability of Act 6 to both installment land contracts and leases with

---

[77] 41 Pa. Cons. Stat. § 408.

[78] See, e.g., Nicholas Belfiore v. Matthew Saad Muhammed, a/k/a Matthew Franklin, 11 Phila. Co. Rptr. 384, 385 (Pa. Ct. Com. Pl. 1984) (finding an oral contract void *ab initio* for violating a state regulation which said "[n]o contract between a manager and a professional boxer . . . *shall be legally valid and binding*, until both parties thereto have appeared before the Commission and have received its approval of the contract endorsed thereon") (emphasis added); W.S. Weed, 12 Pa. Super. at 419 (declining to enforce a fire insurance contract under the doctrine of equitable estoppel because a state statute declared that such contracts "shall be void").

[79] Brown v. City of Pittsburgh, 186 A.2d 399, 360 (Pa. 1962) (emphasis in the original).

[80] Com v. Scolieri, 813 A.2d 672, 678 (Pa. 2002).

[81] United Nat. Ins. Co. v. Indian Harbor Ins. Co., 2015 WL 437630 at *8 (E.D. Pa. Feb. 2, 2015) (citing Brown, 186 A.2d at 401).

[82] Dkt. No. 192 at ¶ 9.

14

purchase options in a prior filing,[83] Debtors' counsel represented that "I'd like to lead the Court to believe that I'm such an outstanding lawyer that I knew all this at the time, but I did not. It dawned on me in October when I was working on the banking arrangement to make payments."[84] There can be no waiver absent intention, nor can either party have misled the other without actual knowledge of the potential applicability of Act 6.

The Supreme Court of Pennsylvania has expressed receptiveness to the idea that judicial estoppel may apply to court-approved settlement agreements. In In re Estate of Bullotta, the wife in a divorce proceeding filed a petition to enforce a settlement agreement distributing the marital assets, and the trial court entered a consent order.[85] After the husband died, the wife argued that the settlement agreement was void.[86] The court concluded that judicial estoppel was inapplicable because the consent order meant there "was no adjudication or inconsistency in the case at hand."[87] The implication of this holding is that judicial estoppel would have been applicable if there had been an adjudication. In their concurrence, three justices wrote that they would have applied judicial estoppel even in this instance because the wife "initially asserted that there was a valid settlement agreement, but now contends that the agreement is void."[88]

In the present case, the Court did more than merely enter a consent order approving the Settlement Agreement. It conducted a hearing to evaluate the standards required by

---

[83] See supra note 73 and accompanying text.

[84] Audio Recording of Hearing Held in Courtroom A, December 20, 2017 at 1:44:34 p.m.

[85] In re Estate of Bullotta, 838 A.2d 594, 598 (Pa. 2003) (Cappy, J., concurring).

[86] Id. at 596. This argument was erroneous. Id. at 597.

[87] Id.

[88] Id. at 598.

Bankruptcy Rule 9019(a).[89] The determination lies within the Court's "sound discretion,"[90] which must be based on four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[91] The inquiry also requires a determination that the settlement agreement is "fair and equitable" and that "no one has been set apart for unfair treatment."[92] Both in their motion to approve the Settlement Agreement and at the hearing to consider it, the Debtors represented to the Court that they were fully aware of the risks associated with the forfeiture procedure and that they agreed to accept them to avoid litigation expenses and protect their interest in the Property.[93] The Court relied on these representations in its decision to approve the Settlement Agreement.[94] It also took additional steps to ensure the agreement was fair by amending its notice provisions, which the Debtors accepted without exception.[95] To permit them to challenge those provisions now would be to dance on their puppet strings, first buying them time in the Property at the expense of Ciccozzi's argument that their prior purchase option had expired, then taking away the consideration they offered in exchange. The integrity of the judicial process cannot allow this result. The Court will not

---

[89]    FED. R. BANKR. P. 9019(a).

[90]    In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

[91]    In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).

[92]    In re Medical Asset Management, Inc., 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000) (citations omitted).

[93]    See supra note 20 and accompanying text; Audio Recording of Hearing Held in Courtroom A, September 19, 2017 at 2:20:40 p.m.

[94]    Dkt. No. 146.

[95]    Id.

entertain their attempt to "blow hot and cold"[96] by asserting their acceptance of risky forfeiture provisions under the guise of Court approval only to challenge them as soon as they are triggered in the very same action. To the extent counsel for the Debtors had actual knowledge of the applicability of Act 6 to the Settlement Agreement at the time of the mediation as his prior pleading implies, the Debtors are judicially estopped from asserting additional protections under the statute at this time.[97] To the extent Debtors' counsel did not possess this knowledge (as he represented), there was no waiver in violation of Act 6. Either scenario achieves the same result.

### III.

Although the Debtors have not established that Act 6 affords them protections beyond the purview of the Settlement Agreement, Ciccozzi is not entitled to forfeiture on the basis of the untimely—yet subsequently received and retained—payments. It is a well-established principle of contract law "that a purchaser's default in making payments under a land contract may be waived either by express agreement or by the words or conduct of the seller."[98] In Wilson v. King of Prussia Enterprises, Inc., the Supreme Court of Pennsylvania held that even a time-is-of-the-essence provision in a contract for the sale of real property could be "waived by the conduct

---

[96] See, e.g., Reese v. Reese, 506 A.2d 471, 474 (Pa. Super. Ct. 1986) (citation omitted). But see In re VEC Farms, LLC, 395 B.R. 674, 684 (Bankr. N.D. Cal. 2008) (holding that under California law, the court could consider whether a liquidated damages clause in a settlement agreement approved under Bankruptcy Rule 9019(a) violated a statute requiring liquidated damages to be reasonable). This case is distinguishable because the trustee filed the motion to approve the settlement agreement rather than the party seeking to challenge it, so the doctrine of judicial estoppel did not apply. See id. at 679. Further, unlike the prohibition on waiver in Act 6, the statute expressly provided that a liquidated damages clause "is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Id at 686 (citing CAL. CIV. CODE § 1671(b)).

[97] Cf. Heckman v. Addison, 2016 WL 5424395 at *4 (Pa. Super. Ct. Aug. 3, 2016) (holding that vendees under an installment land contract were precluded from appealing a confession of judgment on the basis that the clause providing for it violated Act 6 because they failed to raise the issue at trial).

[98] Gray v. Gray, 671 A.2d 1166, 1172 (Pa. Super. Ct. 1996).

17

of the parties."[99] While Ciccozzi had the "right to insist on strict performance, he was equally at liberty to permit a variance."[100]

Recently, Ciccozzi cites <u>Brown</u> for the proposition that he could not have misled the Debtors into the "honest belief that . . . waiver was consented to" because he filed notices of defaults as the Settlement Agreement required.[101] He argues that the Debtors' right to acquire the Property expired upon their default and that their continued payments contradicted the express terms of the Settlement Agreement in a "unilateral effort to deprive Ciccozzi of the remedies they agreed to."[102] He suggests the payments were "for the fair rental value of the property" and not further installments.[103] But the Settlement Agreement does not provide for Ciccozzi to continue to receive payment from the Debtors upon a default as rent. To the contrary, it states that "any further rights or remedies may arise only under this Agreement and the Orders of Court."[104] The Court recognizes that Ciccozzi did not "lull[] the [D]ebtor[s] into a false sense of security,"[105] but neither will the equities permit him to enjoy the benefit of the payments on one hand while seeking to remove the Debtors from the Property on the basis that their payments were untimely on the other. Though the Court authorized Ciccozzi to retain the late payments by an *Order* on February 15, 2018,[106] his retention of them prior to that date waived their untimeliness. In reaching this

---

[99]     <u>Wilson v. King of Prussia Enters., Inc.</u>, 221 A.2d 123, 126 (Pa. 1966).

[100]    <u>C. Trevor Dunham, Inc. v. Nemitz</u>, 82 Pa. Super. 383, 384 (Pa. Super. Ct. 1923).

[101]    Dkt. No. 217 at ¶ 2 (quoting <u>Brown</u>, 186 A.2d at 401).

[102]    <u>Id.</u>

[103]    <u>Id.</u> at ¶ 5.

[104]    Ex. A, Dkt. No. 137-1 at ¶ 27.

[105]    <u>Warren Tank Car Co. v. Dodson</u>, 199 A. 139, 142 (Pa. 1938).

[106]    Dkt. No. 197.

conclusion, the Court does not imply that Ciccozzi's conduct has altered the terms of the Settlement Agreement or that he is not free to enforce its terms with respect to any future defaults so long as he rejects the Debtors' untimely attempts to cure.

### IV.

For the foregoing reasons, the Debtors' *Motion to Deny Ronald A. Ciccozzi's Request for Relief from Stay*[107] is **GRANTED** in part to the extent it seeks to deny Ciccozzi forfeiture or stay relief for the November and December 2017 defaults and otherwise **DENIED** in part with respect to any argument that state law modifies the Settlement Agreement as set forth in the motion. To the extent Ciccozzi's notices of default request forfeiture or stay relief for the November or December 2017 defaults, they are **DENIED** as waived.[108]

A separate order will issue.

Dated: April 9, 2018

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

<u>Case administrator to mail to:</u>
Debtors
Gary W. Short, Esq.
Thomas E. Reilly, Esq.
Ronda J. Winnecour, Esq.
Office of the U.S. Trustee

---

[107]   Dkt. No. 170.

[108]   Dkt. Nos. 169, 182.